FOR PUBLICATION

IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| MYRON DANIELSON, JACKIE THOMAS, ELMA OSBORNE, and ARTHUR JOSEPH, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 2003-26 |
| INNOVATIVE COMMUNICATIONS, CORP., and VITELCO, | ) ) ) | |
| Defendants. | ) ) ) | |

ATTORNEYS:

**Lee J Rohn, Esq.**
St. Croix, U.S.V.I.
*For the plaintiffs,*

**Kevin A Rames, Esq.**
St. Croix, U.S.V.I.
*For the defendants.*

<u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

Before the Court is the motion of the plaintiffs Myron Danielson ("Danielson"), Jackie Thomas ("Thomas"), Elma Osborne ("Osborne"), and Arthur Joseph ("Joseph") (collectively, the

Danielson v. Innovative, et al.
Civil No. 2003-26
Memorandum Opinion
Page 2

"Plaintiffs") to remand this matter to the Superior Court of the
Virgin Islands, Division of St. Croix (the "Superior Court").

## I.  FACTS

In 1996, Vitelco, a Virgin Islands telephone company,
applied for certain tax advantages from the Territory through the
Economic Development Commission (the "EDC").[1]  Those tax
advantages were granted upon the condition that Vitelco provide
certain benefits to its employees.

On January 13, 2003, the Plaintiffs commenced an action in
the Superior Court against Vitelco and its parent company,
Innovative Communication Corporations ("Innovative") (together,
the "Defendants").  See Danielson v. Innovative, et al., Terr. Ct.
Civ. No. 15/2003.  The complaint states that "[e]ach Plaintiff is
a suitable representative of the class of workers of all present
and past employees of Vitelco from the time Vitelco was approved
for [EDC] benefits to the end of such benefits or any renewals."

---

[1]  In 1996, when Vitelco received the tax benefits in
question, the entity charged with awarding such benefits was
called the Industrial Development Commission.  In 2000, the name
of that entity was changed to the Economic Development
Commission. See 29 V.I.C. § 704 (2000).  Recognizing this
renaming, this Court will refer to such entity as the Economic
Development Commission.

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 3

(Compl. ¶ 6, Jan. 13, 2003.)[2]  It also states that all of the
Plaintiffs are taxpayers in the Virgin Islands.  The complaint
alleges that Vitelco and Innovative breached certain conditions
precedent to receiving the EDC tax advantages and failed to
provide the Plaintiffs with the required benefits.  The
Plaintiffs claim to have suffered economic damages as a result of
the Defendants' breach.  The complaint seeks "an accounting as to
the amount of tax benefits received, the amount due for pension,
EEOP, employee savings plans, payment of benefits not received,
repayment of tax benefits, costs and attorneys['] fees, pre[-]
and post[-]judgment interest . . . ." (*Id.* at 3.)

On February 5, 2003, the complaint was personally served
upon Vitelco and Innovative.

On February 25, 2003, the Defendants filed a notice of
removal to this Court.  The notice stated:

> Plaintiffs Complaint alleges that unionized employees did
> not receive benefits to which they were entitled.  Although
> stated in the nature of a taxpayers complaint, the taxpayers
> are all Steelworkers members at Vitelco.  The relationship
> between the Steelworkers' employees and Vitelco is governed

---

[2]  Specifically, Danielson was employed for 32 years as a
"splicer" for Vitelco, until he was terminated in November, 2002.
(Compl. ¶ 2, Jan. 13, 2003.)  Thomas was employed as a lineman at
Vitelco's construction department for 16 years.  Osborne was a
"frameman" at Vitelco for 29 years until she was replaced during
a strike in 2002. (*Id.* at ¶ 4.)  Joseph was an telephone and
cable installer and repairman with Vitelco for 29 years.

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 4

    by the Labor Management Relations Act, 29 U.S.C. §§ 141, *et seq.*

(Notice of Removal at ¶ 2, Feb. 25, 2003.)  The notice of removal further provided that "this action is one in which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 and, accordingly, can be removed to Federal Court pursuant to 28 U.S.C. § 1441.  This Court has supplemental jurisdiction over Plaintiffs['] alleged [t]erritorial [l]aw claims pursuant to 28 U.S.C. § 1367." (*Id.* at ¶ 3.)

    After this matter was removed to this Court, Innovative was placed in bankruptcy.  On October 2, 2007, the Plaintiffs moved to sever Innovative and proceed in this matter against Vitelco alone.  On October 3, 2007, the motion was granted and Innovative was severed from this matter.

    A hearing on the instant motion to remand was conducted on April 14, 2008.  At the hearing, both parties called witnesses to testify on their behalf.  Vitelco also admitted several documents as exhibits, including: its articles of incorporation and amendments thereto, its 1997 Government of the Territory of the Virgin Islands of the United States Industrial Development Certificate (the "EDC Certificate"), and the Labor Agreement Between Innovative Telephone Corporation and the United Steelworkers of America - AFL-CIO (the "collective bargaining

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 5

agreement," or the "CBA").  At the conclusion of the hearing, the

Court took the matter under advisement.

## II.  <u>DISCUSSION</u>

An action may be removed to federal district court if the

district court would have original jurisdiction over the matter.

*See* 28 U.S.C. § 1441(a) (2002).[3]  A removed case will be

remanded, however, "if at any time before final judgment, it

appears that the district court lacked subject matter

jurisdiction." 28 U.S.C. § 1447(c) (1996).  If the parties are

not diverse,[4] and the matter does not sound in admiralty,[5] then

this Court's jurisdiction must be based on the existence of a

federal question under 28 U.S.C. § 1331 ("Section 1331").[6]  *See*

---

[3]  Section 1441(a) provides:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

28 U.S.C. § 1441(a).

[4]  *See* 28 U.S.C. § 1332(a) (2005).

[5]  *See* 28 U.S.C. § 1333(1) (1949).

[6]  Pursuant to Section 1331, "[t]he district courts shall have original jurisdiction [over] all civil actions arising under

Danielson v. Innovative, et al.
Civil No. 2003-26
Memorandum Opinion
Page 6

Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 107 S.Ct. 2425,

2426, 96 L.Ed.2d 318 (1987) ("Absent diversity of citizenship,

federal-question jurisdiction is required.").  Under this

standard, "a defendant may not remove a case to federal court

unless the plaintiff's complaint establishes that the case arises

under federal law.'" Franchise Tax Bd. of State of Cal. v.

Construction Laborers Vacation Trust for S. Cal., 463 U.S. 1, 10,

103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); see also Metropolitan Life

Ins. Co. v. Price, 501 F.3d 271, 276 (3d Cir. 2007) ("Federal

question jurisdiction exists when the plaintiff's well-pleaded

complaint establishes that federal law creates the cause of

action. (citation and quotations omitted)).

For an action to "arise under" federal law within the

meaning of Section 1331, "[a] right or immunity created by the

Constitution or laws of the United States must be an element, and

an essential one, of the plaintiffs cause of action." Franchise

Tax Bd. of State of Cal., 463 U.S. at 10-11.  In determining

"jurisdiction over federal issues embedded in state-law claims

between nondiverse parties . . . .  the question is, does a

state-law claim necessarily raise a stated federal issue,

actually disputed and substantial, which a federal forum may

---

the Constitution, laws, or treaties of the United States." .28
U.S.C. § 1331 (1980).

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 7

entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).  On the other hand, if the Court finds that a plaintiff has "artfully pleaded" a cause of action by omitting necessary federal questions, "it may uphold removal even though no federal question appears on the face of the plaintiff's complaint." *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475, 118 S.Ct. 921, 139 L.Ed.2d 912 (1998).  Under this principle, removal is appropriate where federal law completely preempts otherwise well-pled state law claims. *See In re Community Bank of Northern Virginia*, 418 F.3d 277, 293-94 (3d Cir. 2005) ("[T]he complete preemption doctrine is an 'independent corollary' to the well-pleaded complaint rule." (quoting *Caterpillar, Inc.,* 482 U.S. at 393))

"When considering a motion to remand, the removing party has the burden of establishing the propriety of the removal." *Fuerzig*, 174 F. Supp.2d at 353; *see also Abels,* 770 F.2d at 28 ("[I]t is the defendant's burden to show the existence of federal jurisdiction.").

### III.  <u>ANALYSIS</u>

Danielson v. Innovative, et al.
Civil No. 2003-26
Memorandum Opinion
Page 8

Vitelco asserts that this Court has jurisdiction over the matter because the Plaintiffs' claims, although stated in the nature of territorial law, involve a federal question arising under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("Section 301").  In Vitelco's view, the facts contained in the complaint indirectly allege violations of the collective bargaining agreement between the Steelworkers' Union and Vitelco, thereby raising a federal question under Section 301.  Alternatively, Vitelco contends that federal jurisdiction is appropriate because the Plaintiffs' claims are completely preempted by Section 301.

## A.   The Complaint

Vitelco concedes that the complaint in this matter does not explicitly invoke a federal cause of action.  Indeed, the complaint does not, on its face, rely expressly rely on either territorial or federal law.  It alleges that Vitelco received tax cuts on condition that they, *inter alia,* "maintain[] a work force of 421 employees, provide employee stock options, provide employees with a 401 K plan, and provide employees with a savings plan." (Compl. at ¶ 13., Jan. 13, 2003.)  The complaint states that Vitelco "breached those conditions and have failed to provide Plaintiffs with said benefits." (*Id.* at 14.)  It also avers that "the Plaintiffs, as taxpayers, are entitled to require

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 9

the repayment of said tax benefits to the Virgin Islands

government." (*Id.* at 19.)  In essence, the Plaintiffs purport to

assert: (1) a third-party beneficiary claim for breach of a

contract between the government and Vitelco and (2) a Virgin

Islands taxpayer suit.

Vitelco argues that federal jurisdiction is nonetheless

appropriate because the allegations in the complaint show that

the action was commenced solely on behalf of members of the

Steelworkers' Union who were subject to the collective bargaining

agreement.  It also claims that the complaint indirectly alleges

violations of the collective bargaining agreement.

However, the complaint makes absolutely no reference to any

Union or any collective bargaining agreement.  Moreover, a

complaint does not raise a federal question on its face simply

because the nature of the misconduct alleged therein involves

benefits covered by a collective bargaining agreement. *See*

*Goepel,* 36 F.3d at 310 ("Although the nature of the contract that

the [plaintiffs] are seeking to enforce ultimately may lead a

court to find that their state claims are preempted, their

complaint does not raise a federal question on its face merely by

virtue of the fact that it alludes to a federal contract.").

Accordingly, even assuming that the complaint in this matter

alleges a deprivation of benefits covered by the collective

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 10

bargaining agreement, it does not, on its face, support federal question jurisdiction. *See, e.g., id.* at 309 ("[A]lthough the [plaintiffs'] breach of contract and unconscionability claims do not rely expressly on either state or federal law, in the absence of any indication that the [plaintiffs] intended to invoke federal common law, we conclude that 'on their face' these claims are grounded exclusively on New Jersey common law."); *United Jersey Banks v. Parell*, 783 F.2d 360, 367 (3d Cir. 1986) (holding that the plaintiffs' claims, which were "patently derived from state law" did not "afford[] a basis for finding that [the] plaintiffs' right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties").

**B.    Section 301 Preemption**

Vitelco further contends that, even if the complaint does not raise a federal question on its face, removal is appropriate under the doctrine of complete preemption.  It argues that the Plaintiffs' third party beneficiary breach of contract and taxpayer claims involve Vitelco's failure to provide pension benefits, which fall within the scope of the collective bargaining agreement.  Accordingly, Vitelco asserts, such claims are completely preempted by Section 301.

Section 301 provides:

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 11

> Suits for violation of contracts between an employer and a
> labor organization representing employees in an industry
> affecting commerce as defined in this chapter, or between
> any such labor organizations, may be brought in any district
> court of the United States having jurisdiction of the
> parties, without respect to the amount in controversy or
> without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1947).

"Section 301 is not only jurisdictional, 'it authorizes
federal courts to fashion a body of federal law for the
enforcement of these collective bargaining agreements.'"
*Beidleman v. Stroh Brewery Co.*, 182 F.3d 225, 231-32 (3d Cir.
1999) (quoting *Textile Workers Union of Am. v. Lincoln Mills of
Alabama*, 353 U.S. 448, 451, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957));
*see also Antol v. Esposto*, 100 F.3d 1111, 1115 (3d Cir. 1996)
("Although section 301 refers only to jurisdiction, it has been
interpreted as authorizing federal courts to fashion a body of
common law for the enforcement of collective bargaining
agreements."). Due to the "need for uniform interpretation of
contract terms to aid both the negotiation and the administration
of collective bargaining agreements," *Antol,* 100 F.3d at 1115,
"the subject matter of [Section] 301(a) is peculiarly one that
calls for uniform law." *Teamsters v. Lucas Flour Co.*, 369 U.S.
95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (citation and
quotations omitted)); *see also Berda v. CBS Inc.*, 881 F.2d 20, 23
(3d Cir. 1989) ("Lack of certainty as to the meaning of contract

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 12

terms could lead to lack of agreement; thus, if state laws were not preempted, industrial peace would be threatened.").

Accordingly, Section 301 has been held to completely preempt state law claims that fall within the scope of the statute. *See Franchise Tax Bd. of Cal.,* 461 U.S. at 24 (discussing the potential of Section 301 to completely preempt state law); *Kline v. Security Guards, Inc*., 386 F.3d 246, 252 (3d Cir. 2004) ("Section 301 . . . has been held to possess preemptive force.").

> [T]he preemptive force of [Section] 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.  Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [Section] 301.

*Franchise Tax Bd. of Cal.,* 461 U.S. at 24 (internal citation and quotations omitted)); *see also Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) ("[Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law . . . ."); *Voilas v. General Motors Corp.*, 170 F.3d 367, 372-73 (3d Cir. 1999) ("[S]tate laws that might produce differing interpretations of the parties' obligations under a collective bargaining agreement are preempted.").

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 13

The standard for whether Section 301 completely preempts a
state law claim has been articulated as follows: "[W]hen
resolution of a state-law claim is substantially dependent upon
analysis of the terms of an agreement made between the parties in
a labor contract, that claim must either be treated as a
[Section] 301 claim, or dismissed as pre-empted by federal
labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202,
220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (internal citation
omitted); *see also Caterpillar, Inc.,* 482 U.S. at 394 ("Section
301 governs claims founded directly on rights created by
collective-bargaining agreements, and also claims substantially
dependent on analysis of a collective-bargaining agreement."
(citation and quotations omitted)).

> [I]f the resolution of a state-law claim depends upon the
> meaning of a collective-bargaining agreement, the
> application of state law (which might lead to inconsistent
> results since there could be as many state-law principles as
> there are States) is pre-empted and federal labor-law
> principles-necessarily uniform throughout the Nation-must be
> employed to resolve the dispute.

*Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06,
108 S.Ct. 1877, 100 L.Ed.2d 410 (1988).  Conversely, a state law
claim is considered independent, and thereby not subject to
Section 301 preemption if it "can be resolved without
interpreting the [collective bargaining] agreement itself."
*Lingle*, 486 U.S. at 410.

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 14

The Court must therefore determine whether resolution of the Plaintiffs' territorial law claims requires construction of the collective bargaining agreement.  If so, the matter is completely preempted by Section 301 and removal to this Court is appropriate.  On the other hand, if the Plaintiffs' claims can be resolved without interpreting the collective bargaining agreement, then Section 301 preemption does not apply and the matter must be remanded to the Superior Court.

**1.   Breach of contract**

"In general, a person must be in privity to a contract to sue for damages for breach of such contract. However, under certain conditions a person may sue as a third party beneficiary to a contract." *Sanchez v. Innovative Tel. Corp.*, 2007 U.S. Dist. LEXIS 93255 at *4 (D.V.I. Nov. 30, 2007) (quoting *Harper v. Gov't of the V.I.*, 1982 U.S. Dist. LEXIS 9416 at *6 (D.V.I. Apr. 14, 1982).  A third-party beneficiary is either intended or incidental. *See id.; see also* Restatement (Second) of Contracts § 302 (1981).[7]  Section 302 of the Restatement (Second) of Contracts ("Section 302") provides:

---

[7]   "In the absence of local law to the contrary, the Restatement is the authoritative law." *Chase v. V.I. Port Auth.*, 3 F. Supp. 2d 641, 643 (D.V.I. 1998); V.I. CODE ANN. tit. 1 § 4 (1921).

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 15

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

    (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

    (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302.

Under Virgin Islands law, only an intended third-party beneficiary of a contract may bring an action for breach of the contract. *See Sanchez,* 2007 U.S. Dist. LEXIS 93255 at *5 ("To bring suit on a contract to which a plaintiff is not a party, the plaintiff must be an intended third-party beneficiary of the contract."); *Kmart Corp. v. Balfour Beatty, Inc.*, 994 F. Supp. 634, 636 (D.V.I. 1998) (explaining that "[a]n intended beneficiary acquires a right under the contract," while "[a]n incidental beneficiary does not").

"To succeed on a breach of contract claim, a plaintiff must show four elements: (1) an agreement, (2) a duty created by that agreement, (3) a breach of that duty, and (4) damages." *Galt Capital, LLP v. Seykota*, 2007 U.S. Dist. LEXIS 53199 at *6

Danielson v. Innovative, et al.
Civil No. 2003-26
Memorandum Opinion
Page 16

(D.V.I. July 18, 2007); *see also Stallworth Timber Co. v. Triad*

*Bldg. Supply*, 968 F. Supp. 279, 282 (D.V.I. App. Div. 1997)

(explaining the requirements for a breach of contract claim);

Restatement (Second) of Contracts §§ 235, 237, 240 (providing

that a breach of contract occurs when a party does not perform a

duty imposed by a contract).

　　The complaint in this matter states that "[t]he Plaintiffs

and those similarly situated were third-party beneficiaries" of a

contract between Vitelco (through Innovative) and the government

of the Virgin Islands, which was memorialized in the EDC

Certificate.  Vitelco has not challenged the status of the

Plaintiffs as intended third-party beneficiaries of that

contract.  Pursuant to that contract, the government agreed to

grant EDC tax benefits to Vitelco and Vitelco agreed to provide

certain benefits to its employees.  The complaint further avers

that Vitelco breached its contractual obligation to provide such

employee benefits, and that the Plaintiffs suffered damages as a

result.

　　Vitelco contends that resolution of the Plaintiffs' breach

of contract claim requires interpretation of the collective

bargaining agreement because the employee benefits in question

were covered therein.  Specifically, Vitelco asserts that the

complaint seeks accounting for "the amount due for pension," and

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 17

that pension benefits were covered by the collective bargaining agreement.  However, the Plaintiffs do not allege that Vitelco breached any agreement to provide pension benefits.  The complaint does not list pension benefits among the other employee benefits Vitelco contracted with the government to provide in exchange for EDC status.  The breach alleged in the complaint was Vitelco's purported failure to provide employee stock options, employee 401-K retirement plans, and employee savings plans.  Significantly, neither employee stock options, employee 401-K plans, nor employee savings plans are covered by the collective bargaining agreement.  Rather, Vitelco agreed to provide those benefits to its employees pursuant to the terms of the EDC Certificate.  At the April 14, 2008, hearing, Jada Finch-Sheen, Vice President of Legal Affairs for Vitelco, admitted that a difference exists between the 401-K retirement plans required by the EDC Certificate and the pension benefits covered in the collective bargaining agreement.

In sum, the Plaintiffs have alleged that Vitelco breached duties imposed solely by the EDC Certificate – a contract between Vitelco and the government, separate from the collective bargaining agreement between Vitelco and the Steelworkers Union. Resolution of the Plaintiffs breach of contract claim therefore requires analysis of the EDC Certificate, the duties imposed

therein, and the intent of Vitelco and the government to benefit the Plaintiffs through the EDC Certificate.  Vitelco has not presented, nor is the Court aware of, any aspect of the Plaintiffs' breach of contract claim that would require consultation, much less interpretation, of the collective bargaining agreement.

Accordingly, the Plaintiffs' breach of contract claim is not preempted by Section 301. *See, e.g., Trans Penn Wax Corp. v. McCandless,* 50 F.3d 217, 231 (3d Cir. 1995) (holding that Section 301 did not preempt the plaintiffs' state-law breach of contract claim against their employer because "[t]he duties claimed to be owed to [the Plaintiffs] [we]re firmly rooted in the separate guarantee, not the collective bargaining agreement"); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-96, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (holding that the plaintiffs' claim for breach of individual employment contracts were not preempted by Section 301 because such claims were not substantially dependent upon interpretation of the collective-bargaining agreement).

### 2. **Taxpayer Suit**

Pursuant to title 5, section 80 of the Virgin Islands Code ("Section 80"), "[a] taxpayer may maintain an action to restrain illegal or unauthorized acts by a territorial officer or employee, or the wrongful disbursement of territorial funds." 5

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 19

V.I.C. § 80; *see also Smith v. Gov't of the V.I.*, 329 F.2d 131,

133 (3d Cir. 1964) ("The purpose of the statute is the salutary

one of enabling taxpayers to obtain the aid of the [] court to

restrain any . . . illegal diminution of territorial funds . . .

either through the unlawful creation of territorial debt, the

unlawful expenditure of territorial funds or the unlawful

alienation of territorial property.").

> Particularly are such suits useful in territories, such as
> the Territory of the Virgin Islands, where the territorial
> governor is appointed from Washington and neither he nor the
> executive officers and employees appointed by him are
> answerable to the voters of the territory or subject to
> impeachment or removal by the elected territorial
> legislature.

*Smith,* 329 F.2d at 133.

To sustain a taxpayer suit under Section 80, a plaintiff

must show: (1) that he is a Virgin Islands taxpayer; and (2) that

territorial funds were wrongfully disbursed. *See id.* at 133-35

(explaining that a Section 80 plaintiff need not show that he

paid a minimum amount of Virgin Islands taxes, that the alleged

misconduct involved public funds to which the his tax payments

contributed, or any "special damage to himself different in

character from that suffered by the general body of taxpayers");

*see also Donastorg v. Gov't of the V.I. ex rel. Departments and*

*Agencies and its Com'rs and Directors,* 45 V.I. 259, 270 (Terr.

Ct. 2003) ("The Legislature of the Virgin Islands enacted

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 20

standing upon taxpayers, without the demonstration of a
particularized injury, pursuant to [Section] 80.").

    To satisfy these requirements, the Plaintiffs allege that
they are each taxpayers in the Virgin Islands, and that
territorial government wrongfully gave Vitelco EDC tax cuts
despite Vitelco's failure to satisfy the conditions precedent to
receiving such tax cuts.  The conditions precedent to achieving
EDC tax benefits included providing employee stock options, 401-K
retirement plans, and employee savings plans.  As discussed
above, those conditions were imposed by the EDC Certificate, not
the collective bargaining agreement.  Therefore, whether the
government wrongfully granted EDC benefits to Vitelco turns on
Vitelco's compliance with the conditions of the EDC Certificate.
Vitelco has not shown any relationship at all between the
government's alleged wrongful disbursement of EDC tax benefits to
Vitelco and the collective bargaining agreement between Vitelco
and the Steelworkers' Union.  Indeed, the Court is unaware of any
reason why it would be necessary to interpret the collective
bargaining agreement in order to resolve the Plaintiffs' taxpayer
suit.  Because the Plaintiffs' taxpayer suit is independent of
the collective bargaining agreement, it is not preempted by
Section 301. *See Antol v. Esposto*, 100 F.3d 1111, 1117 (3d Cir.
1996) ("Claims that are independent of a collective bargaining

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Memorandum Opinion
Page 21

agreement, even if they are between employees and employers, are

not removable.").

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant the instant

motion and remand this matter for further proceedings in the

Superior Court.  An appropriate Order follows.


**S\_____**
   **Curtis V. Gómez**
    **Chief Judge**

FOR PUBLICATION

### IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. CROIX

| | | |
|---|---|---|
| MYRON DANIELSON, JACKIE THOMAS, ELMA OSBORNE, and ARTHUR JOSEPH, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil No. 2003-26 |
| INNOVATIVE COMMUNICATIONS, CORP., and VITELCO, | ) ) ) | |
| Defendants. | ) ) ) | |

ATTORNEYS:

**Lee J Rohn, Esq.**
St. Croix, U.S.V.I.
    *For the plaintiffs,*

**Kevin A Rames, Esq.**
St. Croix, U.S.V.I.
    *For the defendants.*

<u>ORDER</u>

**GÓMEZ, C.J.**

Before the Court is the motion of the plaintiffs Myron Danielson ("Danielson"), Jackie Thomas ("Thomas"), Elma Osborne ("Osborne"), and Arthur Joseph ("Joseph") (collectively, the "Plaintiffs") to remand this matter to the Superior Court of the

*Danielson v. Innovative, et al.*
Civil No. 2003-26
Order
Page 2

Virgin Islands, Division of St. Croix (the "Superior Court").

For the reasons stated in the accompanying memorandum opinion of even date, it is hereby

    **ORDERED** that the motion is **GRANTED**; it is further

    **ORDERED** that this matter is **REMANDED** to the Superior Court for further proceedings consistent with this Memorandum Opinion and Order; it is further

    **ORDERED** that all pending motions shall be **DENIED** without prejudice; and it is further

    **ORDERED** that the Clerk of the Court shall close this matter.

S\_____
          **Curtis V. Gómez**
          **Chief Judge**